Your Honor, before I start, there are two issues presented. One, of course, the one-year rule, and the other is a credibility. Is there one direction or the other that this Court would rather we focus on? Well, you have the jurisdictional question about whether the application was timely. Yes. So it might be helpful if you address that for a few moments. The government has asked, on that particular issue, the government has asked that we send that question to the BIA for them to look at it in the first instance. I understand that. No, they didn't say, we want you to send the whole thing back, and they didn't say what their view was with respect to the adverse credibility determination. Yes. And they didn't say anything about withholding, which is not affected by the time bar on asylum, nor is CAT. So it's kind of, you can think of the issues. Do the best I can, then, is that right? Yes. All right. As to the one-year rule, this Court has jurisdiction under the Real ID Act, under Section 106A1, capital A, 3 small i, to review questions of law. And this Court has arguably expanded that, some would say expanded it, in the concept of Ramadan versus Gonzales, where the Court can take into consideration mixed questions of fact and law. I believe this case does not pose a mixed question of fact and law. HCFR 208.482 small i is quite clear. The language is indisputable. It says the one-year period shall be calculated from the date of the alien's last arrival into the United States. Well, the question is, what does that mean? What does last arrival mean? Yeah. It seems to me it means the last arrival, Your Honor. I don't know how you can take that and turn it into the first arrival, the second arrival, or the third arrival. So in this particular case, he came, initially arrived in the United States because he was going to work on the ship. Yes. It's a common scenario. I guess the ship is sometimes docked in our waters, leaves our waters. Right. Comes back, departs, comes back, gets these little passes, but departs and comes back. That's correct. So you would say that that's fine in multiple arrivals, multiple departures, and what that regulation is dealing with is the last arrival? That's what it says. It says the last arrival. It's a bright-line test, Your Honor. The one-year rule is a bright-line test. If you file your application one day after one year, then too bad. You're out of luck unless you've got a good excuse. I believe that the regulation is also a bright-line test. If you file it within one year of your last arrival, as the English says, then that's also a bright-line test, and that should be within the regulation. Now, interestingly, you know, the statute doesn't have the term last in the statute. It doesn't, but I don't know why you would read that any other way. I mean, imagine all the mischief that could be made by immigration judges looking for ways to deny cases. If you could have any arrival into the United States, somebody could come in in 1925 and stay for a week, and, you know, by 1926, their time had expired. They could never apply for asylum again. Let's take a look at what, if you don't mind. Does it cause any problem with your argument, too, on when the last time? He came, he went aboard a ship. The ship happened to go out on seven-day cruises. He went with the ship on the seven-day cruises, never left the ship, according to his testimony. He stayed with the ship when he came in. So you think his last arrival just happens to be whichever time he incidentally walked off the boat? Well, everybody else on that ship, Your Honor, was considered to be someone arriving when they got off the boat. That ship went off. Yeah, but he said he didn't. He said he stayed with the boat when it came in. But the last time, he got off the boat. All right. And bear in mind that when he got off the last time, he got off under a legal status. Arrival is not defined. It's any coming of the person. No, I'm clear. I just want, I mean, you can move to your next point. I just wanted to be clear that you think the fact that he was cruising in and out, although he stayed with the boat, each time the boat came into town, he had arrived. At no time. I don't think I need to get to the fact of each time. I think the question is what happened on the last arrival, the last time the boat came in. Three points. Number one, in the government's I-863 on page 377, the CIS alleges that his last arrival was on June 22, 2001. Second, that was conceded at a preliminary court hearing where the judge asked the counsel if there's an issue relating to the one-year rule. The counsel said no. His last arrival was 6-22-01. The judge said, okay, fine. This only came to light at the merits hearing when, for the very first time, the judge seemed to raise the issue, probably in an off-the-record discussion, to clue the trial attorney in. And at that time, without any notice to counsel at that time, the issue was raised without any benefit of briefing or preparation. However, there's one other issue that I think is critical. An arrival, as I stated, is any movement of a person from outside of the country to the inside of the country. There is a more exacting definition in Section 101 of the Act dealing with admission. An individual who is admitted in the United States as a person who presents himself at a port is inspected and allowed to come in. A person can arrive without being admitted. A person cannot be admitted without arriving. My client was admitted. He was given a Form I-95 and a three-day or four-day period to stay in the United States. Upon his last arrival in the port of Miami, I believe it was, he was admitted as a person authorized to be here for three days. If a person is admitted, he must have arrived. It's within the subsection. And that is his last arrival. I think we don't need to get to the point of the in-and-out and the in-and-out. We just simply look at that last time. Perhaps if he had jumped ship sometime during the way, he could have a different conclusion. Now, what about credibility? The IJ didn't go on, I don't think, to resolve the rest of the case. You know, the problem is that when you wiped away his asylum claim, you increased the standard of proof that he had to go for. He still found him uncrowned. Well, he did. And the respondent. What about that determination? Well, the respondent stated in his statement a number of very serious things that happened to him. Had three arrests. He was imprisoned. He was mistreated.  He was a member of a Shan organization. He was arrested because of his association with that Shan organization, as were others. What he left out, what the judge, and again, looking for a way to deny his case, he left out the fact that prior to the first arrest, he suffered what I would call a detention. February 1995, he was walked to a police station by two gentlemen on bicycles in broad daylight. He was questioned about the SSA, which I believe is the Shan State Army. He was not harmed or mistreated. He was talked to for an hour. He was let go with a threat or a warning not to participate anymore. He himself deemed that not important. When he stated his case, he says, I'm basing my asylum application on the following. Then he goes under three rather serious arrests where he was, in fact, mistreated and held in prison. He didn't mention that he was a secretary in the Shan organization, but that wasn't why he was arrested. He said he was arrested for participating in the organization, as well as others who were arrested for participating in the organization. And when he testified, he said he was arrested for participation, not because he was a secretary. What difference could it make what his hierarchy is if his reason for persecution was his simple participation? The third statement was he didn't say that he was required medical attention after his 1999 arrest. Perhaps it could be presumed that after being beaten, kicked, and hit with a rifle butt, he might have needed a checkup, which is essentially what he did. He went to a clinic and he got checked up. I guess he may have been worried about broken ribs or what have you, but no treatment was given. He was just looked at, and that wasn't mentioned. This court has held that a person need not state every single aspect of his case. You could go on and on and on for, I guess, days writing your story, but you are allowed to expand on it during the course of testimony. Bear in mind, this is an individual who doesn't speak English, like so many of them. He comes in. He finds a guy that can speak English a little better than he. They sit together. The man writes the story. An immigration judge that I've appeared in front of does not allow these stories into evidence where they're written in English and the person's first name is not English, first language is not English. They require the individual to rewrite his story in his native language and then get it translated by a competent translator. And then that does away with the question of whether or not the guy who speaks English better than I do and who helped me write the story put something in or left it out. I think it's a compelling story supported by documentation. What is your ultimate request of this? What is it that you're asking us to do? Obviously, the best case for my client is to find that the court does have jurisdiction, which I think that's clear, and that the one-year rule means exactly what it says it means. What do we do with that? What happens? Do we send it back to the BIA? Do we go on and decide everything else? I think you can reverse the immigration judge on credibility right here. It's done commonly. Now, if you want to give the BIA another shot at it, I guess that would be my second choice, and maybe they would remand it in view of the changed circumstances. Perhaps they would do that. But I think this Court can decide the entire case. Okay. Thank you. You're welcome. Thank you. Good morning, Your Honors. May it please the Court, Charles Kanner on behalf of the Attorney General. The first thing I'd like to mention is the one easy aspect, I think, procedurally, of this case, and that was mentioned by Judge Pai as the CAT claim. That claim, I believe, has been waived. That was not raised in the opening. Asylum and withholding. Yes, asylum and withholding. And as to the timeliness of the asylum filing, I don't believe it's quite as clear as a petitioner would have it. I don't think it's quite as easy a decision. And I think maybe the best way to analyze this case is as a case where the Board improperly affirmed without opinion under the regulations. And under this Court's precedent in Chen v. Ashcroft, which is 378 F. 3rd, 1081, where the Board streamlines improperly, that is, affirms without opinion improperly, and you have a novel issue that's not squarely controlled either by Board precedent or Federal Court precedent, and I'm not aware of any precedent anywhere in the country addressing this issue, what arrival means for purposes of the one-year bar. The best thing to do is to remand to the Board to let the agency have the first crack at deciding the issue. Especially in this case where there's not even sort of because of the ever-shifting sands of review of immigration decisions, the Court doesn't have the benefit of a brief by the government. It only has an IJ's oral decision and petitioner's brief on the matter. So I think the best thing to do, consistent with Chen, this Court's precedent, and consistent with just the general principles in INS v. Ventura, would be to remand to the Board to make a decision on whether or not the IJ was correct on the timeliness of the asylum issue. What do we do? Well, so he has another point that's not affected by the one-year. That's withholding, and their credibility is important. Credibility is important, and this is where it does sort of get thorny. If the Court wanted to remand the entire case, the government has no opposition to remanding the entire case. I don't believe the Court necessarily has authority to order the Board to reconsider the credibility determination without a finding of error. Right, that's probably correct. So then the question is, what do you do with it? Because if the Court finds that substantial evidence supports the IJ's adverse credibility determination, then I think the Court could deny the entire petition because there would be no credible evidence. The petitioner would have presented no credible evidence on any of his claims. But on the other hand, if the Court does find, does reverse the credibility determination, then everything's back in play. And I think everything is back in play because even if you reverse the adverse credibility determination, you cannot actually find that he's entitled to withholding because there's not been a finding that if he had presented credible testimony, then he would have met his burden. The other issue is persecution. Right, or past persecution or anything of that nature. So there's got to be a remand of some sort unless the Court wants to consider the issue, consider the credibility holding, find that it's supported by substantial evidence, then I think you could deny the entire petition because there wouldn't be, even though there are different standards, there would be no credible evidence before the agency on its side. We had a case not too long ago, a couple of years ago I guess it was, and I was on the panel. Unfortunately, I can't think of the name of it. I thought about this last night. But where we couldn't tell, the panel couldn't tell whether the Board had decided the case based on timeliness or some other ground. And we felt that part of the case had to go back to the BAR, to the BIA, but that we should go ahead and decide the withholding claim, and we did, and then we sent the case back to the BIA. It seems to me that's what we should do here. Yeah, that would be, that sounds right. And, again, the ultimate disposition would depend on how the Court felt. So what about the credibility finding? Well, I think it is not the most incredible of stories, but it is at the same time what you have is some significant discrepancies between his written application and his testimony. And it's important to remember how these asylum applications proceed. It's the applicant's burden to demonstrate eligibility for asylum. He fills out the form. He has an interview. The asylum officer can either grant asylum or refer to the immigration judge. It goes to the immigration judge in this case. And now, where he knows that his story the first time, as told, was not good enough, we suddenly have a much better story when there's a lot more time to prepare. And to address the English issue, at the beginning of these hearings, and in this case I think it's page 73 of the record, the petitioner is expressly asked, are you familiar with the contents of your asylum application? Was it read to you in a language you can understand? He specifically asked that. The petitioner said, yes, I did. You have an opportunity before you sign your asylum application before the immigration judge to supplement it however you want to. But he didn't do that. Instead, when it's time to testify, he now has an extra arrest. He's no longer just a member of a party. He's an officer of the party. He wasn't just harassed. He was beaten so severely he required medical treatment. Our case law really does allow them to expand on their story when they get to the hearing. Expand, yes. I don't think embellish, no. Details and whatnot. Details, yes, and minor details and even minor inconsistencies are not an issue. But where his story significantly here, the February 1995 arrest, this would have been his first, according to his testimony, this would have been the first time he really had a problem with the government. It seems natural that he would say, you know, I've had a problem with the government since February 1995. He leaves that out. Instead, his story begins in December of 1995. So supplement, yes. Embellish, no. And when you look at it in the context of how these applications proceed, again, he knows now that his story wasn't good enough as he first presented it, and now it's got a lot of not just new details but, you know, whole new events that make it some details that make it much more severe and a whole extra event. So I think taken together, the IJ could reasonably conclude that the petitioner had significantly embellished his claim. And the record, you know, it's a substantial evidence standard, so the record doesn't compel the conclusion that this is incorrect. Are there any other questions? Thank you. Thank you, Your Honor. Any minute from the bottom. The greatest way to determine credibility is cross-examination. It's a right. All sides have a right of cross-examination. This gentleman testified. He was cross-examined by both the trial attorney and the immigration judge, and his story, his testimony was clear, concise, unrebutted, and in great detail. There is no contradiction between his story and what was his testimony and what was written. There is minor things added. Question is, had those things been put in in the first place, would the immigration judge have granted his case? Probably not. He would have found another way to deny it. This was a case that was going to be denied, and it was denied on reasons that are not material to the claim. The claim is supported by excellent testimony. It is supported by well-known and well-documented country conditions, and the surplusage that he had. And we don't know what he testified to at the Anaheim Asylum Office. The Anaheim Asylum Office denies about 90 percent of the cases. It doesn't matter what you say. If he's going to add something, surely he would have added something a little more significant than a one-hour chat and a medical examination and being secretary. Thank you. Thank you. We appreciate your arguments. The matter will be submitted. Let's see. Our next case is Rahman v. Pizza. Nazibur Rahman.
judges: Farris, Paez, Conlon